UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICARDO BONILLA, in his individual capacity and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>NORTHSTAR ELECTRICAL SERVICES AND CONTRACTORS, INC., and ROBERT LAPLACA in his individual capacity,<br><br>Defendants. | Case No.:<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff, **RICARDO BONILLA** ("Plaintiff"), by and through his attorneys, **ZABELL & COLLOTTA, P.C.**, complains and alleges as follows:

## I.   PRELIMINARY STATEMENT

1. Plaintiff brings this action seeking monetary damages, declaratory relief, and affirmative relief based upon Defendants' violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, *et seq.*; New York State Department of Labor Regulations ("NYDOL Regs"), N.Y.C.R.R. § 142-2.2, common law, and other appropriate rules, regulations, statutes and ordinances.

2. Plaintiff alleges pursuant to the FLSA and NYLL, that he is entitled to recovery from Defendants: (1) overtime compensation for all hours worked in excess of forty (40) hours per week; (2) liquidated damages; and (3) attorneys' fees and costs.

1

## II. JURISDICTION AND VENUE

3. This Court maintains jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1367.

4. This Court maintains jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

5. This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the conduct alleged herein occurred within the State of New York, in the Counties of Queens, Suffolk and Nassau.

6. This Court is empowered to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III. COLLECTIVE ACTION ALLEGATIONS

7. This action is properly maintainable as a collective action pursuant to 29 U.S.C. § 216(b).

8. This action is brought on behalf of Plaintiff and a class consisting of similarly situated employees all of whom work or have worked for Defendants as electricians.

9. At all relevant times, Plaintiff and other FLSA collective action Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, are and have been subject to Defendants' decisions, policies, plans and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them overtime pay at a rate of one and one-half (1.5) times their regular hourly rate for hours worked in excess of forty (40) hours per week, as compensable travel time.

10. Upon information and belief, there exist many current and former employees who are similarly situated to Plaintiff, all of whom have been underpaid in violation of the FLSA. The named Plaintiff is representative of those other workers and is acting on behalf of Defendants' current and former employees' interests as well as his own interests in bringing this action.

11. Plaintiff seeks to proceed as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all similarly situated persons who work or have worked for Defendants as electricians at any time during the six (6) years prior to the filing of their respective consent forms.

12. Plaintiff and potential Plaintiffs who elect to opt-in as part of the collective action are all victims of Defendants' common policy and/or plan to violate the FLSA by failing to provide overtime wages, at the rate of one and one-half (1.5) times the regular rate of pay, for hours worked in excess of forty (40) hours in any given week pursuant to 29 U.S.C. § 207, as compensable travel time.

3

13. The Collective Action Members are similarly situated to Plaintiff in that they were each employed by Defendants as non-exempt employees and were systematically denied overtime premium pay for hours worked beyond forty (40) in each workweek as compensable travel time.

14. The exact number of such individuals is presently unknown but is known by Defendants and can (and will) be ascertained in the course of discovery.

## IV. PARTIES

15. Plaintiff was at all times relevant herein, a domiciliary of the State of New York, residing in Bay Shore, New York.

16. At all times relevant to the Complaint, Plaintiff was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e) and Section 190(2) of the NYLL, N.Y. Lab. Law § 190(2).

17. Upon information and belief, Defendant, **ROBERT LAPLACA** ("Defendant Laplaca"), was at all times relevant herein, a domiciliary of the State of New York.

18. Defendant **NORTHSTAR ELECTRICAL SERVICES AND CONTRACTORS, INC.** (Defendant Northstar), is a domestic business corporation located at 941 Church Street, Bohemia, New York 11716.

19. Defendant Northstar operates as a contractor, providing commercial and residential electrical services to clients throughout the tri-state area.

20. Upon information and belief, Defendant Laplaca was an owner, part owner, or principal of Defendant Northstar, and (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules and the work environment; and (3) determined the rate and method of payment of employees.

21. At all times relevant to the Complaint, each Defendant acted as an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and Section 190(3) of the NYLL, N.Y. Lab. Law § 190(3).

22. Upon information and belief, at all times relevant herein, Defendant Northstar was an "enterprise" and performed activities for a business purpose within the meaning of 29 U.S.C. §§ 203(r)(1) and (r)(2), due to its operation of an electrical services contracting business.

23. Upon information and belief, at all times relevant herein, Defendants employed more than two (2) employees and had a gross annual dollar volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) due to their operation of the electrical services contracting business.

24. Upon information and belief, at all times relevant to the Complaint, Defendants employed more than two (2) employees engaged in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A) in connection with the operation of their electrical contracting business.

25. Upon information and belief, at all times relevant to the Complaint, Defendants employed employees, including Plaintiff, who regularly were and are presently engaged in commerce within the meaning of 29 U.S.C. § 203(b), (g), in connection with the operation of their electrical services contracting business.

## V.  FACTS

26. Plaintiff repeats and realleges each and every allegation contained herein.

27. Plaintiff was hired by Defendants on or around May 2019 as an electrician.

28. Plaintiff worked for Defendants as an electrician from his date of hire until his termination in April 2022.

29. At all times relevant herein, Plaintiff performed the essential functions of his position in a more than satisfactory manner and satisfied all conditions precedent to payment in accordance with the established terms and conditions of his employment.

30. For the duration of his employment, Plaintiff provided electrical services such as lighting and maintenance at commercial and residential locations.

31. Plaintiff was typically required to report to Defendants' place of business in Bohemia between 6:00 a.m. and 7:00 a.m.

32. Upon arriving to Defendants' place of business each day, Plaintiff received a schedule of job assignments and was required to drive one of Defendants' company vans from Bohemia to each job site.

33. Plaintiff would typically stock his company van with materials at the beginning of each day before driving to his first job site.

34. Plaintiff was typically assigned a partner who would travel with Plaintiff in the company van throughout the day.

35. For the duration of his employment, Plaintiff was assigned to job sites primarily at Stop & Shop, 7-Eleven, and Dollar Tree locations across Nassau, Suffolk, Brooklyn, Queens, and Westchester Counties.

36. Typically, Plaintiff was required to drive to Stop & Shop locations as far as Long Beach and Riverhead, and 7-Eleven locations as far as Montauk.

37. Plaintiff was also required to drive to Dollar Tree locations as far as Brooklyn and Miller Place.

38. At any given job site, Plaintiff was often tasked with repairing both outdoor and indoor lighting fixtures, and performing maintenance work on boilers or phone lines.

39. After completing his last job for the day, Plaintiff was required to drive his company van back to Defendants' place of business in Bohemia.

40. Plaintiff typically returned his company van to Defendants' place of business in Bohemia between 5:30 p.m. and 6:30 p.m each day.

41. On or about the week ended October 20, 2019, Plaintiff was regularly assigned to a job site in Queens and returned the company van to Defendants' place of business in Bohemia at 8:15 p.m. or later on four (4) of the six (6) days Plaintiff worked that week.

42. Plaintiff was at all times a "non-exempt" employee eligible for an overtime premium for all hours worked in excess of forty (40) per week.

43. For the duration of his employment, Plaintiff typically worked no less than fifty (50) hours per week.

44. For the duration of his employment, Plaintiff was compensated on a weekly basis at a rate of $29.00 per hour.

45. For the duration of his employment, Plaintiff either went uncompensated for overtime work, or at times was compensated at a rate of $43.50 per hour.

46. For the weeks Plaintiff went uncompensated for overtime work, Defendants failed to compensate Plaintiff at a rate of one and a half (1.5) times his hourly rate for all hours worked in excess of forty (40) hours per week.

47. In addition, from the commencement of Plaintiff's employment, Defendant Laplaca refused to compensate employees for travel time for returning a company van to Defendants' place of business in Bohemia at the end of each workday.

48. Defendant Laplaca purposely scheduled job sites that were furthest away from Bohemia for the end of each workday, requiring employees to travel back to Bohemia after normal working hours, in an effort to avoid compensating employees for travel time associated with the return of the company van at the end of each workday.

49. Periodically, and only in direct response to Plaintiff's complaints, Defendant Laplaca compensated Plaintiff for this travel time. However, Plaintiff was not provided with compensation for his travel time on a consistent basis.

50. Upon information and belief, none of Defendants' other employees were compensated for compensable travel time at any point during their employment.

51. On or about April 2022, Defendant Laplaca announced that employees would not receive compensation for travel time to return a company van at the end of each workday.

52. On or about April 7, 2022, Plaintiff complained to Defendant Laplaca about Defendants' unlawful travel time policy, to which Defendant Laplaca responded "I don't care what no law is, you can throw it in the garbage."

53. On or about April 11, 2022, Plaintiff contacted Defendants' office manager, Kathy, to confirm the number of vacation and sick days Plaintiff accrued, as Plaintiff was scheduled to use vacation time to take off from work from April 18, 2022 until April 26, 2022.

54. In response, Kathy sent to Plaintiff, Defendants' record of the vacation and sick time Plaintiff had used during the previous two (2) years, which provided that Plaintiff had three (3) unused days for the year ending May 20, 2022, and ten (10) unused days for the year ending May 20, 2023.

55. Defendants' record was inaccurate, as in multiple instances, Plaintiff was incorrectly recorded as having used vacation time when Plaintiff had in fact used earned sick time.

56. On or about April 14, 2022, Defendant Laplaca terminated Plaintiff's employment in retaliation for his complaints.

57. Defendants maintained no policy regarding paying an employee for their accrued but unused vacation time upon the cessation of their employment.

58. On or about April 20, 2022, Plaintiff contacted Kathy to inquire about the absence of compensation in Plaintiff's final check for his accrued but unused vacation time.

59. In response, Kathy advised Plaintiff to speak to Defendant Laplaca.

60. On or about April 21, 2022, Plaintiff informed Defendant Laplaca of the issue and in response, Defendant Laplaca advised Plaintiff that he would not be paid for his accrued but unused vacation time.

61. During Plaintiff's employment, he received a $250.00 traffic ticket while driving a company van during working hours.

62. Defendants deducted the cost of the traffic ticket from one of Plaintiff's paychecks.

63. Defendants made this deduction without providing Plaintiff advance notice.

64. Defendants have no handbook or written policy that provides for the deduction of the cost of a traffic ticket from an employee's paycheck.

65. Defendants also failed to provide Plaintiff with written notice of his wage rate, in accordance with the New York State Wage Theft Prevention Act, NYLL § 195(1).

66. In addition, Defendants failed to provide Plaintiff with accurate wage statements, in accordance with NYLL § 195(3).

## VI.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Failure to Pay Overtime – FLSA Violation)

67. Plaintiff repeats and realleges each and every allegation contained herein.

68. Plaintiff worked in no less than fifty (50) hours per week, every week between on or about May 2019, until on or about April 2022.

69. At times throughout his employment, Plaintiff did not receive overtime premium compensation at the rate of one and one-half (1.5) times his regular rate of pay for all hours worked in excess of forty (40) hours.

70. Consequently, by failing to pay overtime premium compensation, Defendants violated the governing provisions of the FLSA.

71. Upon information and belief, Defendants' failure to pay overtime premium compensation was willful.

72. By the foregoing reasons, Defendants are liable to Plaintiff in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (Failure to Pay Overtime – New York Labor Law Violation)

73. Plaintiff repeats and realleges each and every allegation contained herein.

74. Plaintiff worked in excess of forty (40) hours per week, every week between on or about May 2019, until on or about April 2022.

75. At times throughout his employment, Plaintiff did not receive overtime compensation at a rate of one and one-half (1.5) times his regular rate of pay for all hours worked in excess of forty (40) hours.

76. Consequently, by failing to pay to overtime premium compensation, Defendants violated 12 NYCRR § 142-2.2.

77. By the foregoing reasons, Defendants violated 12 NYCRR § 142-2.2 and are liable to Plaintiff, in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees, and costs.

## THIRD CLAIM FOR RELIEF
### (Retaliation – FLSA Violation)

78. Plaintiff repeats and realleges each and every allegation contained herein.

79. Defendants terminated Plaintiff in retaliation for his complaining about Defendants' failure to pay for travel time, in violation of the FLSA, 29 U.S.C. § 215(a)(3).

80. As a proximate result of Defendants' retaliatory conduct, Plaintiff has suffered a substantial loss of earnings and other employment benefits.


81. Plaintiff is entitled to equitable and injunctive relief and an award of compensatory, emotional, and liquidated damages and attorneys' fees all in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
(Retaliation – NYLL Violation)

82. Plaintiff repeats and realleges each and every allegation contained herein.

83. Defendants terminated Plaintiff in retaliation for his complaining about Defendants' failure to pay for travel time, in violation of New York Labor Law § 215.

84. As a proximate result of Defendants' retaliatory conduct, Plaintiff has suffered a substantial loss of earnings and other employment benefits.

85. Plaintiff is entitled to equitable and injunctive relief and an award of compensatory, and liquidated damages and attorneys' fees all in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
(Prohibited Deduction – NYLL Violation)

86. Plaintiff repeats and realleges each and every allegation contained herein.

87. 12 NYCRR § 195-2.1 prohibits employers from making deductions from wages unless the deduction is made in accordance with a law, for the recovery of overpayments, for the repayment of wage advances, or specified by or similar to deductions under Section 193 of the NYLL.

88. 12 NYCRR § 195-4.5 accounts for deductions that are expressly not similar to deductions under Section 193 of the NYLL, and prohibits deductions for "Repayment of employer losses, including for spoilage and breakage, cash shortages, and fines or penalties incurred by the employer through the conduct of the employee."

89. Plaintiff was issued a traffic ticket while operating a company vehicle.

90. Defendants deducted the amount of the traffic ticket from Plaintiff's paycheck.

91. Consequently, by making a prohibited deduction from Plaintiff's paycheck, Defendants violated the New York Labor Law § 190, *et seq.*

92. By the foregoing reasons, Defendants violated 12 NYCRR § 195-2.1 and are liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees and costs.

### SIXTH CLAIM FOR RELIEF
(Failure to Provide 195.1 Notice – NYLL Violation)

93. Plaintiff repeats and realleges each and every allegation contained herein.

94. Defendant Northstar willfully failed to supply Plaintiff with the required Notice and Acknowledgement of Pay Rate and Payday under § 195.1(a) within 10 business days of his first employment date.

95. Due to Defendant Northstar's violations of N.Y. Lab. Law § 195.1, Plaintiff is entitled to recover from Defendant J&V Auto $50.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab. Law § 198(1)-b.

## SEVENTH CLAIM FOR RELIEF
(Failure to Provide 195.3 Notice – NYLL Violation)

96. Plaintiff repeats and realleges each and every allegation contained herein.

97. Defendant Northstar willfully failed to supply Plaintiff with an accurate wage statement with each payment of wages, violating N.Y. Lab. Law § 195.3.

98. Due to Defendant Northstar's violations of N.Y. Lab. Law § 195.3, Plaintiff is entitled to recover from Defendant Northstar $250.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab. Law § 198(1)-d.

## EIGHTH CLAIM FOR RELIEF
(Failure to Pay Accrued but Unused Vacation Time – NYLL Violation)

99. Plaintiff repeats and realleges each and every allegation contained herein.

100. Defendants maintained no policy on the use of vacation time.

101. During his employment, Plaintiff accrued both vacation time and sick time.

102. Defendants willfully inaccurately recorded Plaintiff's sick time as vacation time, in an effort to avoid paying Plaintiff sums due and owing to him at his termination of employment.

103. Defendants willfully failed to pay Plaintiff for accrued but unused vacation time upon the termination of his employment.

104. By the foregoing reasons, Defendants violated the New York Labor Law and are liable to Plaintiff in an amount for unpaid accrued but unused vacation time to be determined at trial, plus interest, attorneys' fees and costs.

## V.   DEMAND FOR JURY TRIAL

105. Plaintiff repeats and realleges each and every allegation contained herein.

106. Plaintiff hereby demands a trial by jury.

**WHEREFORE**, as a result of the unlawful conduct and actions of Defendants herein alleged, Plaintiff and those individuals similarly situated, respectfully request this Court grant the following relief:

   a) An award of earned but unpaid overtime due and owing to Plaintiff and those similarly situated under the FLSA and the NYLL;

   b) An award of damages compensating Plaintiff for Defendants' prohibited payroll deduction under the NYLL;

   c) An award of damages compensating Plaintiff for Defendants' failure to compensate Plaintiff for accrued but unused vacation time under the NYLL;

   d) The issuance of an order declaring Defendants violated the FLSA and NYLL;

e) An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, preventing them from engaging in each of the unlawful practices, policies and patterns set forth herein;

f) An award of liquidated damages where allowed by statute;

g) An award of emotional damages in an amount to be determined at trial for Defendants' FLSA violations;

h) An award in an amount to be determined at trial for Defendants' violation of the FLSA's anti-retaliation provisions;

i) An award in an amount to be determined at trial for Defendants' violation of the NYLL's anti-retaliation provisions;

j) Defendants be ordered to pay Plaintiff pre and post judgment interest;

k) Defendant to pay all costs and disbursements of this action, including Plaintiff's attorneys' fees; and

l) Order such other and further relief as may be just and proper.

Dated: Bohemia, New York
November 1, 2022

                                                  ZABELL & COLLOTTA, P.C.
                                                 *Attorneys for Plaintiff*

By: _____

                                                  Christopher K. Collotta, Esq.
                                                  ZABELL & COLLOTTA, P.C.
                                                  1 Corporate Drive, Suite 103
                                                  Bohemia, NY 11716
                                                  Tel. (631) 589-7242
                                                  Fax (631) 563-7475
                                                  ccollotta@laborlawsny.com