UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RICARDO BONILLA *in his individual capacity and on behalf of himself and all others similarly situated,*

                            Plaintiff,

                -against-

NORTHSTAR ELECTRICAL SERVICES AND CONTRACTORS, INC. *et al*,

                          Defendants.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**

22-CV-06642 (JMW)

**A P P E A R A N C E S:**

Ryan M. Eden, Esq.
Christopher Keith Collotta, Esq.
**Zabell & Associates**
1 Corporate Drive, Suite 103
Bohemia, NY 1171
*Attorneys for Plaintiff*

David S. Feather, Esq.
**Feather Law Firm, P.C.**
666 Old Country Road, Suite 509
Garden City, NY 11530
*Attorney for Defendants Northstar Electrical Services and Contractors, Inc. and Robert Laplaca (in his individual capacity)*

**WICKS,** Magistrate Judge:

Plaintiff, Ricardo Bonilla ("Plaintiff")[1] commenced this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, *et seq.*, New York State Department of Labor Regulations, N.Y.C.R.R. §142-2.2, common law, and other rules, regulations, statutes, and ordinances on November 1, 2022, against Defendants, NorthStar Electrical Services and Contractors, and Robert Laplaca (collectively, "Defendants") alleging that he was not compensated for overtime work and travel time, wrongfully deducted payment for accrued but unused vacation time, terminated in retaliation for his complaints, deducted payment from his paycheck for a traffic ticket while operating a company vehicle, and failed to supply Plaintiff with the required Notice and Acknowledgment of Pay Rate and Payday under NYLL §195.1(a) and accurate wage statements as required under NYLL § 195(3).

Presently, before the Court is the parties' joint motion for settlement approval. For the reasons set forth below, the motion (ECF Nos. 16, 17, and 18) is granted.

## FACTUAL BACKGROUND

Defendant Northstar Electrical Services and Contractors, Inc. is a contractor that provides both commercial and residential electrical services to various clients. (ECF No. 1 ¶ 19.) Laplaca is an owner, part owner, or principal of Northstar who could "hire and fire employees;" "supervise[] and control[] employee work schedules and the work environment;" and determine[] the rate and method of [employees'] payment." (*Id.* ¶ 20.) Plaintiff was employed

---

[1] This case was originally brought by Plaintiff "in his individual capacity and on behalf of himself and all others similarly situated" but there were no efforts to certify this action as a class or collective. (*See generally* ECF No. 1.) The motion for settlement approval, therefore, is only being sought by Plaintiff individually. (*See generally* ECF No. 16.)

as an electrician by Defendants from May 2019 until his termination in April 2022. (*Id.* ¶¶. 27-28.)

Throughout his employment, Plaintiff was a "non-exempt" employee eligible for an overtime premium for hours worked in excess of forty (40) hours per week. (*Id.* ¶ 42.) As an electrician, Plaintiff provided services such as lighting and maintenance at commercial and residential locations. (*Id.* ¶ 30.) Plaintiff received his job schedule at the beginning of each workday and was required to drive one of Defendants' company vans from headquarters to each job site and return the van to headquarters at the end of each workday. (*Id.* ¶¶ 31-32, 39.) These job locations spanned from Long Island to Brooklyn and sometimes Westchester. (*Id.* ¶ 35.) Plaintiff asserts that Defendants refused to consistently compensate him for travel time for returning a company van to Defendants' headquarters at the end of each workday. (*Id.*) Plaintiff was only compensated for travel time in direct response to his complaints. (*Id.*)

Plaintiff contends that he worked "no less than fifty (50) hours per week" and alleges that Defendants failed to compensate him for overtime work for the duration of his employment.[2] (*Id.* ¶¶ 43, 46.) Further, Plaintiff states that he was not consistently paid for the travel time for returning the van to Defendants' work site after every shift. (*Id.* ¶¶ 47, 49.) He also alleges that Defendants inaccurately recorded his vacation and sick time, deducting time from his time bank that he had never taken. (*Id.* ¶¶ 54-55.) And, a $250.00 traffic ticket received on the job was reduced from his paycheck without notice. (*Id.* ¶¶ 61-62.) Plaintiff alleges he was eventually fired in retaliation for his complaints to Defendant Laplaca. (*Id.* ¶ 56.)

---

[2] Plaintiff's allegations comport with the FLSA pleading requirements recently set forth by the Second Circuit. *See Herrera v. Comme Des Garcons, Ltd.*, 84 F.4th 110, 112 (2d Cir. 2023) ("Where the Plaintiffs plausibly allege that they worked more than forty hours per week as part of their regularly scheduled workweek, they have adequately stated a claim under the FLSA and need not list the specific workweeks during which they worked more than forty hours.").

3

## **PROCEDURAL BACKGROUND**

Plaintiff commenced this lawsuit on November 1, 2022. (ECF No. 1.) Defendants filed their answer on January 26, 2023 (ECF No. 13) largely denying Plaintiff's claims and asserting a multitude of affirmative defenses.

The undersigned held an initial conference with the parties on January 17, 2023 (ECF No. 11) and entered a scheduling order in which parties were to notify the Court by March 31, 2023 as to whether they are have reached a settlement in this case. (*See* ECF No. 12.)

On March 20, 2023, parties reported that they reached a settlement in principle and would submit their joint motion for settlement approval. (ECF No. 14.) Parties submitted their joint motion on May 5, 2023 (ECF No. 16) which was referred to the undersigned on May 12, 2023. (*See* Electronic Order dated May 5, 2023.) Upon review of the submitted materials, the Court ordered the parties to submit supplemental documents, including the 1) retainer agreement; 2) relevant billing records; 3) receipts concerning court filings, and 4) relevant attorney credentials using proper identification. (*See* Electronic Order dated May 15, 2023.) Parties filed the requested documents by June 9, 2023. (ECF Nos. 17 and 18.) Parties were then directed to appear at a fairness hearing on December 19, 2023. (Electronic Order dated Nov. 9, 2023.) At the hearing, the undersigned approved the settlement and indicated that a formal Memorandum and Order ruling on the motion would follow. (ECF No. 19.) The parties subsequently consented to the undersigned for all purposes. (ECF No. 20.)

With regard to the particular settlement, if approved, Defendants would pay $15,000 to compensate Plaintiff. Exactly one-third of the settlement ($5,000) would be disbursed to Plaintiff's counsel and $10,000 would be paid to individual Plaintiff Bonilla. In addition, the release terms are not overbroad and the manner in which the settlement

4

was conducted was fair and reasonable. For the reasons set forth below, the Court finds that settlement approval is warranted.

## LEGAL FRAMEWORK

Federal Rule of Civil Procedure 41 provides, in relevant part, that:

Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

>   (i)   a notice of dismissal before the opposing party serves either an answer of
>                 a motion for summary judgment; or
>   (ii)  a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A).

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act. *Cheeks v. Freeport Pancake House, Inc*, 796 F.3d 199, 206 (2d Cir. 2015). Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id*. (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). Accordingly, in this Circuit, Rule 41's "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Id*.

"Generally, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, No. 17-CV-291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted) *report and recommendation adopted by* 2018 WL 741396 (Feb. 7, 2018). In reviewing the reasonableness of the proposed settlement, courts consider the totality of the circumstances, including relevant factors such as:

5

>(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks and citations omitted).

Factors weighing *against* settlement approval include:

>(1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Id*. (internal quotation marks and citations omitted).

Even if an application of the *Wolinsky* Factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *report and recommendation adopted by* 2017 WL 3037406 (E.D.N.Y July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney . . . without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted). Related to that final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of

6

the action."); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[] the reasonableness of any attorney's fees included in the proposed settlement") (citing 29 U.S.C. § 216(b)).

Against this backdrop the Court reviews the Agreement.

## DISCUSSION

A. Settlement Agreement

i. Plaintiff's Range of Possible Recovery

Plaintiff alleges that he worked approximately 50 hours each week from May 2019 through April 2022 until the date of his termination. (ECF No. 16 at 2.) He calculates $1,700 in base damages which does not include liquidated and Wage Theft Prevention Act penalties. (*Id.*) However, Plaintiff states that these calculations "are based on an optimistic, best-case scenario outcome." (*Id.*) It does not, for instance, take into account Defendants' allegations that Plaintiff's calculated hours are incorrect and that he was ever retaliated against. (*Id.*) And, to date, Defendants still deny any wrongdoing in this case. (*See* ECF No. 16 at 8.)

Therefore, settling at this juncture avoids the possibility of Plaintiff recovering nothing from this case and represents a reasonable compromise of the *bona fide* dispute in this matter. With this agreement, Plaintiff receives $10,000 and his attorneys would receive $5,000. (ECF No. 16 at 5.) The settlement eliminates risk and ensures the Plaintiff will receive a meaningful amount of wages even after legal fees are disbursed.

ii. Avoidance of Anticipated Burdens and Expenses and Litigation Risks

The parties acknowledge that there are risks involved in pursuing litigation in lieu of settlement. (ECF No. 16 at 1.) Although this action was commenced in 2022, the

7

parties' focus on trying to resolve the case has placed the parties at a relatively early stage of discovery. The Court finds that the proposed settlement will allow the parties to undoubtedly avoid the inevitable burdens and expenses in extensive discovery, document drafting, and research that would accompany this matter on its path to trial. (ECF No. 16 at 2.) Those costs alone far outweigh the benefits that could be achieved even if Plaintiff prevails. Indeed, Plaintiff's maximum claimed recovery could very well be far less than expected. Settlement, therefore, is an effective vehicle to avoid the significant risks and costs in further litigating this matter for all parties.

    iii.    **Product of Arm's Length Bargaining**

The agreement was executed with the assistance of seasoned counsel in this field who worked together to come up with this reasonable solution. (ECF No. 16 at 2.) In fact, one provision in the agreement states that "[a]ll parties acknowledge that they have had an opportunity to receive advice about the terms and legal effects of this Agreement from counsel of their choosing. [Plaintiff] hereby represents that he has consulted his attorney(s) about this Agreement before signing it." (ECF No. 16 at 7.) A "presumption of fairness, adequacy and reasonableness may attach to a settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks omitted). Under these circumstances it is beyond peradventure that the negotiated settlement was the by-product of an arm's length process.

    iv.    **Any Badges of Fraud or Collusion?**

Nothing in the record or in the submissions indicate that this settlement was precipitated by reason of overreaching by the employer. Rather, deep discussions into the

8

relative merits of the parties' positions led the parties to candidly assess their respective positions and attendant risks of proceeding through trial.  (*See* ECF No. 16 at 3) (stating that the parties participated in "numerous negotiations all of which were necessary to secure a successful settlement for Plaintiff").

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007).  The Agreement was reached after the parties -- through counsel -- fully evaluated the strengths and weaknesses of the claims and defenses.  No fraud or collusion could be discerned and as such, the Agreement is approved.

    v.    **Other *Wolinsky* and *Cheeks* Factors**

Moreover, the *Wolinsky* factors that weigh against settlement do not compel a rejection of the proposed settlement in this case: (1) there are no other similarly situated workers in this case and the agreement pertains to terms between the named Plaintiff and Defendants only; (2) the circumstances will not recur since Plaintiff no longer works for Defendant Northstar and this resolves the suit in total as the settlement payments constitute the "full and final disposition and complete satisfaction of any and all claims" against the Defendants (*see* ECF No. 16 at 5); (3) there is no history of non-compliance by this employer and the parties have not suggested otherwise; and (4) while it is possible that further discovery could reveal more information as to similarly situated workers or a proper calculation of hours worked by Plaintiff, the parties have agreed not to venture down this path.  *See Garcia v. Grandpa Tony's Enterprises LLC*, No. 20-CV-4691 (JMW), 2021 WL 4949030, at *3 (E.D.N.Y. Oct. 25, 2021) ("Last, although an

9

argument could be made that maturation of this record could lead to further legal development in FLSA cases, this factor alone does not require the Court to reject the proposed settlement agreement").

Finally, the proposed settlement does not contain any of the problematic provisions outlined in *Cheeks*. The parties note that there is no confidentiality requirement and the release in the agreement is not overbroad. (ECF No. 16 at 1, 6.) Rather, it is appropriately limited to claims that were, and could have been, brought under the FLSA and NYLL up to the date of the Settlement Agreement. (ECF No. 16 at 6.) The release is thus reasonable. *Rotthoff v. N.Y.S. Catholic Health Plan, Inc.*, 19-CV-4027 (AMD) (CLP), 2021 WL 1310220, at *2 (E.D.N.Y. Apr. 8, 2021) ("[T]he Court finds [this release] reasonable, as a narrow release limited to the claims at issue in this lawsuit does not offend *Cheeks*."). And finally, the attorneys' fees are exactly one-third of the settlement amount and Plaintiff's counsel has provided documentation supporting the proposed attorneys' fees and costs, which is discussed at length below.

B. Attorneys' Fees

The total settlement amount is $15,000 (ECF No. 16 at 2.) The amount requested Plaintiff's attorneys is $ 5,000, or exactly one-third of the settlement amount and consistent with what was agreed upon between Plaintiff and his counsel in his retainer agreement. (*See* ECF No. 17-1 at 2.)

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request." *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted). When considering the reasonableness of applications for attorneys' fees, Courts employ the lodestar method. *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-CV-

10

3284 (ENV) (LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Courts may also employ the "percentage of the fund" method which permits attorneys to recover a percentage of the settlement amount via a previously determined contingency fee. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417-19 (2d Cir. 2010). "With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable." *Lai v. Journey Preparatroy Sch., Inc.*, No. 19-cv-2970 (CLP), 2022 WL 3327824, at *3 (E.D.N.Y. May 26, 2022); *Kazadavenko*, 2022 WL 2467541 at *4 (collecting cases). However, even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, No. 17-cv-9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted).

"[I]t is very common to seek 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 445; *see also Azogue v. 16 for 8 Hosp. LLC*, No. 13-cv-7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693 (PGG), 2013 WL 5492998, at *26 (S.D.N.Y. 2013).

Critically, "[t]he fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020);

11

*Wolinsky*, 900 F. Supp. 2d at 336 ("In the Second Circuit, that entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.").

Plaintiff's counsel states that they spent 28.5 hours "drafting pleadings, engaging in the exchange of discovery, and participating in numerous negotiations" to get to this point. (ECF No. 16 at 3.) This amount of hours is reasonable given the amount of claims in this case in comparison to the case's infancy. In addition, counsel has also incurred $576.40 in various filing fees and service costs. (ECF No. 17 at 3.) Indeed, counsel's retainer also states that Plaintiff will pay counsel one-third of the settlement amount. (*Id.*) As counsel points out though, after deduction of fees and costs, counsel will receive slightly less than the agreed-upon one-third amount. (*Id.*)

Plaintiff's counsel, Collota, an equity partner at the firm, charges $450.00 per hour. (*Id.*) He graduated from St. John's University School of Law in 2000 and has been practicing law for almost 20 years. (*Id.*) He has worked solely on labor and employment law with a majority of his cases being dedicated to FLSA cases. (*Id.*) Ryan Eden graduated from Hofstra University School of Law in 2015 and has been working at the current firm on FLSA cases for approximately six years. (ECF No. 17 at 3.) He is currently a partner at the firm and charges $400.00 an hour. (*Id.*) Finally, Andrew Schuman, a 2022 Hofstra law graduate performed work on this case prior to obtaining his admission to the bar. (*Id.*) His rate is $150.00 an hour. (*Id.*)

In light of the experience of the personnel working on this case, the fee and hours billed as well as the filing fees and service costs are reasonable. Further, the rates charged are consistent with that generally awarded in this District. *See, e.g.*, *Li v. Chang Lung Grp. Inc.*, No.

16-cv-6722 (PK), 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020) (noting that $300 to $450 is range of reasonable hourly rates for partners in FLSA cases within the Eastern District of New York); *Kliger v. Liberty Saverite Supermarket Inc.*, No. 17-cv-2520 (FB) (ST), 2018 WL 4782342, at *9 (E.D.N.Y. Sept. 17, 2018), *report and recommendation adopted as modified* by 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018) (noting that the reasonable hourly rates for wage and hour cases in the district has been set at $300 to $400).

A cross-check of fees applying the lodestar analysis is also warranted. In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Having reviewed the statements and billing records of Plaintiff's counsel, the Court also finds the proposed attorneys' fees to be fair and reasonable after performing a lodestar cross-check. In multiplying the various attorneys' hourly rate by 28.5 (the number of hours expended on this case), Plaintiff's counsel's actual fees amount to $9,371.40.[3] (ECF No. 17-3 at 2.) The actual fee amount would thus be nearly twice as much as the requested attorney fee amount of $5,000 and would amount to more than one half of the $15,000 settlement amount. Further, the attorneys' fees and costs amount requested by Plaintiff's counsel is unopposed by Defendant's counsel, which weighs in favor of approval of the requested amount.

Accordingly, the lodestar cross-check affirms that the requested attorneys' fee of $5,000, which is exactly one-third of the settlement amount, is fair and reasonable in this case.

---

[3] Note that Plaintiff's counsel's calculation of fees contains a slight discrepancy, which totals $9,376.40. (ECF No. 17 at 3.) However, this disparity is immaterial given Plaintiff's counsel is seeking approval for an amount far less than what the lodestar calculation would yield.

13

## **CONCLUSION**

For the foregoing reasons, the parties' joint motion for approval of the settlement agreement (ECF Nos. 16, 17, and 18) is approved and the Clerk of the Court is directed to close the case.

Dated: Central Islip, New York
       January 4, 2024

**S O   O R D E R E D:**

/S/ *James M. Wicks*
      JAMES M. WICKS
   United States Magistrate Judge